

FILED

Feb 07 2025, 9:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



# IN THE
# Court of Appeals of Indiana

Lamenski Ewing,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

February 7, 2025

Court of Appeals Case No.
24A-CR-1721

Appeal from the Vanderburgh Circuit Court

The Honorable Celia Pauli, Magistrate

Trial Court Cause No.
82C01-2204-F3-001994

---

**Opinion by Judge DeBoer**
Judges May and Tavitas concur.

**DeBoer, Judge.**

## Case Summary

[1] Lamenski Ewing pled guilty to two crimes, a felony and a misdemeanor, and was sentenced to a two-year combination of jail time and work release to be followed by three years of probation. While on work release, Ewing failed to return to detention after one of his shifts and disappeared for almost seven months. The State filed a motion to revoke Ewing's community corrections placement but did not file a petition to revoke Ewing's probation sentence. After a hearing, the trial court revoked Ewing's community corrections placement and imposed his entire sentence. Ewing appeals the trial court's revocation of his probation sentence claiming that the State failed to provide him with notice, thereby violating his due process rights. Finding no error, we affirm.

## Facts and Procedural History

[2] Pursuant to his guilty plea to Criminal Confinement and Interference with the Reporting of a Crime, Ewing received an aggregate sentence of five years, a portion of which was to be served in jail, some on community corrections through the Vanderburgh County Therapeutic Work Release Program, and three years of which was to be served on probation.

[3] Ewing placed his initials next to the following paragraph in his plea agreement:

> If a portion of the Defendant's sentence is suspended or executed to a Court-sponsored program, the Defendant understands and has discussed with their legal counsel the Court-sponsored program's rules and that any violation of those rules *will result in revocation of the Defendant's placement on the Court-sponsored program and execution of the Defendant's sentence.*

*Appellant's App. Vol. 2* at 40 (emphasis added).

[4] While on work release, Ewing agreed to follow its rules and acknowledged that he understood "failure to return to the Work Release Facility as scheduled or being in an unauthorized location may subject [him] to criminal prosecution." *Id.* at 90.

[5] Ewing failed to return to detention on August 28, 2023, prompting the State to file a petition to revoke his placement on work release on August 31, 2023. An arrest warrant for Ewing was served on March 24, 2024. The trial court advised Ewing of his charges, including Failure to Return to Lawful Detention as a Level 6 felony.[1] On May 9, 2024, Ewing pled guilty to failure to return to lawful detention. During this hearing, Ewing was advised:

> COURT: If these crimes were committed while you were on probation, parole or serving a prison or serving any sentence, then the sentences for these crimes cannot begin until the others

---

[1] Ewing's other new charges, including Stalking, Intimidation, Harassment, and False Informing, are not part of this appeal, but stem from actions that allegedly occurred while Ewing had absconded from work release. The Stalking, Intimidation, and Harassment charges were later dropped in exchange for Ewing's guilty plea to False Informing for which he received a one-year sentence suspended to probation.

have ended. These are called consecutive sentences. Do you understand that term?

EWING: Yes.

COURT: Do you understand that a violation during any portion of your sentence on that probation may result in your entire sentence being revoked and ordered executed at the Department of Correction?

EWING: Yes.

*Transcript Vol. 2* at 19-20.

[6] On June 20, 2024, the trial court sentenced Ewing to one year executed in the Indiana Department of Corrections ("DOC") for his plea of guilty for his charge of failing to return to lawful detention. During this hearing, the trial court also addressed the State's petition to revoke Ewing's work release in his original case. Although Ewing admitted to violating the terms of work release, Ewing's attorney objected to revocation of Ewing's suspended sentence stating, "I don't think a petition to revoke his suspended sentence is before the Court and I think to revoke and order that into execution without having a petition filed would violate his due process rights." *Id.* at 37. The trial court disagreed, finding, "the caselaw is clear. A person can be revoked [from] a probated sentence before even beginning that portion of the sentence." *Id.* at 38. The trial court also explained it did not find it "logical" to put Ewing on probation when he failed to return to work release, a more restrictive setting. *Id.*

## Discussion and Decision

[7] There is no dispute that the State filed a petition to revoke Ewing's community corrections placement, but it did not file a separate petition to revoke Ewing's probation that he had yet to serve. Ewing argues that in this context the trial court did not have the statutory authority to revoke his suspended sentence and doing so violated Ewing's right to due process under the Fourteenth Amendment. We disagree.

[8] "Placement in community corrections is at the sole discretion of the trial court . . . placement there is a 'matter of grace' and a 'conditional liberty that is a favor, not a right.'" *Toomey v. State*, 887 N.E.2d 122, 124 (Ind. Ct. App. 2008) (quoting *Million v. State*, 646 N.E.2d 998, 1001 (Ind. Ct. App. 1995)). This standard of grace applies to probation as well. *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). Once a court has exercised its grace by ordering probation, a trial court has considerable leeway in deciding how to proceed. *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). As such, trial courts have discretion in determining probation conditions and revoking probation if conditions are violated. *Heaton*, 984 N.E.2d at 616. This discretion is reviewed for abuse. *Smith v. State*, 963 N.E.2d 1110, 1112 (Ind. 2012). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Id.*

## 1. Due Process

[9] Ewing argues that because the State did not provide him with written notice that it was seeking to revoke his probation sentence as well as his community corrections placement, the trial court violated his due process rights by revoking his suspended sentence. For the purpose of appellate review, hearings on petitions to revoke placement in community corrections and hearings on petitions to revoke probation are treated the same. *Cox v. State*, 850 N.E.2d 485, 491 (Ind. Ct. App. 2006). "Although probationers are not entitled to the full array of constitutional rights afforded defendants at trial, 'the Due Process Clause of the Fourteenth Amendment does impose procedural and substantive limits on the revocation of the conditional liberty created by probation.'" *Debro v. State*, 821 N.E.2d 367, 374 (Ind. 2005) (quoting *Cox v. State*, 706 N.E.2d 547, 549 (Ind. 1999), *reh'g denied*). The Indiana Supreme Court said:

> There are certain due process rights, of course, which inure to a probationer at a revocation hearing. These include written notice of the claimed violations, disclosure of the evidence against him, an opportunity to be heard and present evidence, the right to confront and cross-examine adverse witnesses, and a neutral and detached hearing body. Indiana Code § 35–38–2–3(d) also ensures the probationer the right to confrontation, cross-examination, and representation by counsel.

*Isaac v. State*, 605 N.E.2d 144, 148 (Ind. 1992) (citations omitted), *cert. denied*, 508 U.S. 922 (1993). The Indiana Supreme Court also extended these rights to defendants in proceedings to enforce deferred sentences or withheld judgments.

*Debro*, 821 N.E.2d at 375. Thus, due process mandates that the written notice to Ewing disclose the grounds supporting revocation. *Washington v. State*, 758 N.E.2d 1014, 1017 (Ind. Ct. App. 2001).

[10] The State's petition to revoke community corrections placement, filed several months before the revocation hearing, specifically states, "the defendant has failed to make contact and/or return to [work release] and is now considered AWOL."[2] *Appellant's App. Vol. 2* at 74. The petition notes Ewing's absence constituted a direct violation of the following program rule:

> I understand that failure to return to the Work Release Facility as scheduled or being in an unauthorized location may subject me to criminal prosecution.

*Id.*

[11] Ewing admitted violating this provision when he pled guilty to his charge of Failure to Return to Lawful Detention as a Level 6 felony stemming from his work release violation. We are not persuaded by his argument that his due process rights were violated because he did not know that the State sought revocation of his suspended sentence. Ewing agreed, in writing, as part of his plea agreement, that any violation of work release's rules "will result" in

---

[2] Absent Without Leave

execution of his sentence. *Id*. at 40. He was then put on notice of the allegation that he violated these rules via the State's petition.

[12] Our Court addressed the due process implications on a similar set of facts in *Patterson v. State*, 750 N.E.2d 879, 881 (Ind. Ct. App. 2001)*,* where Patterson had been serving a portion of his sentence on work release, to be followed by a suspended portion of his sentence on probation, until the State filed a petition to revoke his work release placement. After finding that Patterson violated the terms of his placement, the trial court ordered Patterson's work release and forthcoming probation term to be revoked and executed in the DOC. *Id.* at 882. Despite Patterson's argument that his due process rights had been violated because he had not been provided notice that his probation could be revoked for violating work release rules, our Court found it "clear" that a violation of work release rules could lead to a revocation of placement and commitment "to the [DOC] for the remainder of the person's sentence." *Id.* at 885; *see also* I.C. § 35-38-2.6-5(b).

[13] The State argues that notice of revocation of Ewing's community corrections placement also served as notice that his probation could be revoked. *See McCauley v. State*, 22 N.E.3d 743, 748 (Ind. Ct. App. 2014)*, reh'g denied, trans. denied*. In *McCauley*, our Court found that McCauley's due process rights were not violated when the trial court revoked the executed and suspended portions of his sentence, despite McCauley's claim that he did not receive notice he could be revoked from both. Ewing attempts to distinguish his case from

*McCauley* by pointing out that the State's notice of violation in *McCauley*, "specifically asked the trial court to revoke both home detention and probation . . ." whereas the State's petition in this case only addressed revoking his community corrections placement. *Id.* However, like McCauley, Ewing was made aware that his entire sentence could be imposed when the trial court advised him of such at the May 9, 2024 hearing and through the signed plea agreement. Unlike McCauley, Ewing's violation of the terms of his participation in community corrections involved the commission of a new felony, which triggered the trial court's statutory authority to terminate probation under a second statute. *See* I.C. § 35-38-2-1(b) ("[i]f the person commits an additional crime, the court may revoke the probation."). Taking this a step further with regard to notice, "it is not necessary to advise a defendant to avoid committing an additional crime as a condition of probation because such a condition is automatically included by operation of law without specific provision to that effect." *Childers v. State*, 656 N.E.2d 514, 517 (Ind. Ct. App. 1995). As a result, the trial court did not violate Ewing's due process by revoking the suspended portion of his sentence.

## 2. Revocation of Suspended Sentence

[14] Ewing also claims a trial court has authority to modify a sentence only after the State files a timely petition to revoke his probation and to modify his sentence.

This prerequisite, Ewing argues, was not satisfied by the State simply filing a motion to revoke his community corrections placement.[3]

[15] As we previously stated, "[a] reviewing court treats a petition to revoke placement in a community corrections program the same as a petition to revoke probation." *Bass v. State*, 974 N.E.2d 482, 488 (Ind. Ct. App. 2012). In this case with these facts, Ewing received all of the due process protections to which he was entitled for both the community corrections revocation **and** the probation revocation with the State's filing of its petition to revoke community corrections placement. In *Ashba v. State*, 570 N.E.2d 937 (Ind. Ct. App. 1991), Ashba received a two-year executed sentence followed by four years on probation. Ashba was paroled from his executed sentence before the end of the two-year sentence. While on parole during the executed portion of his sentence, Ashba was arrested, charged with a misdemeanor, and his probation

---

[3] Ewing relies on Indiana Code § 35-38-2-3(a) which provides:

> The court may revoke a person's probation if:
>> (1) the person has violated a condition of probation during the probationary period; and
>> (2) the petition to revoke probation is filed during the probationary period or before the earlier of the following:
>>> (A) One (1) year after the termination of probation.
>>> (B) Forty-five (45) days after the state receives notice of the violation.

Ewing provides no caselaw where our Court interpreted the statute in this manner. Instead, our Court has recognized this statute as a statute of limitation, imposing a deadline by which to revoke probation. *Sharp v. State*, 807 N.E.2d 765, 767 (Ind. Ct. App. 2004).

was revoked. *Id.* at 938. In finding that the trial court properly revoked Ashba's probation, even though he had not begun serving the probation portion of his sentence, our Court held, "[w]hile at liberty on parole, should a defendant engage in unlawful activity, he thereby violates a condition of probation . . . [a]t that point, the sentencing court has the authority to revoke probation that was previously given." *Id.* at 940. "[O]nce Ashba engaged in unlawful activity, he violated the terms of his probation. Those terms attached to his suspended sentence from the moment the sentence was imposed." *Id.* Ashba's sentence was composed of a suspended sentence with an executed portion, similar to Ewing's.

[16] When a defendant violates the terms of their community corrections placement, as Ewing did, Indiana Code § 35-38-2.6-5(a)(4) gives a trial court authority to order a defendant incarcerated for the remainder of his or her sentence, "regardless of the term of probation included in the original sentencing order[.]" *McCauley*, 22 N.E.3d at 747. We conclude that the trial court had the authority to revoke the suspended portion of Ewing's sentence.

[17] Having established Ewing was adequately notified of the pending revocation of his sentence, and the trial court had authority to actually revoke said sentence, we find the trial court did not abuse its discretion by imposing Ewing's entire sentence. In *McCauley,* for example, in addition to finding no due process violation, our Court found the trial court had discretion to revoke the probation term of McCauley's sentence for the same conduct that caused his community

corrections to be revoked. In doing so, our Court reasoned, "McCauley's failure to comply with the strict requirements of home detention indicates that he would be highly unlikely to succeed under the less-restrictive requirements of informal probation. Instead, he would be at risk to continue his misconduct and endanger himself and others." *Id.* at 748. Ewing disappeared from work release for months and picked up new criminal charges along the way. We see no reason why the trial court abused its discretion in revoking Ewing's probation when he showed a complete disregard for the conditions of placement in a more restrictive environment.

## Conclusion

[18] The trial court's revocation of Ewing's suspended sentence was within its statutory authority and did not violate Ewing's due process rights. Therefore, the trial court did not abuse its discretion by imposing the suspended portion of Ewing's sentence.

[19] Affirmed.

May, J., and Tavitas, J., concur.

ATTORNEY FOR APPELLANT
Matthew Jon McGovern
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General
Indianapolis, Indiana

Caroline Gail Templeton
Supervising Deputy Attorney General
Indianapolis, Indiana